## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR ORANGE COUNTY, FLORIDA

**MATTHEW McMAHON,**                    :
                                       :
        **Plaintiff**                   :
                                       :        **Case No. 22-CA-7660**
**v.**                                  :
                                       :
**ORANGE COUNTY, FLORIDA,**             :
**Fire Chief James M. Fitzgerald,**     :
**Deputy Fire Chief, Operations Mike Wajda,** :
**Assistant Chief Michael A. Howe, and**  :
**Assistant Chief Kimberly Buffkin,**    :
                                       :
        **Defendants.**                 :

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Matthew McMahon, by and through undersigned counsel, and for his

complaint against Defendants, states as follows:

### INTRODUCTION

1.  "No good deed goes unpunished."  This case appears to be quite the illustration of this

maxim.  This is a case involving a first responder firefighter Matthew McMahon, who, having first

served his country and her People through his military service in the Marine Corps, chose to

continue his life of service and sacrifice locally in his own community to become a firefighter and

EMT.

2.  He was hired into Defendant Orange County's fire and rescue department, and has served

admirably for fifteen years….until Defendants began a program last year of discrimination and

harassment against him for reasons entirely unknown and defying reasonable interpretation.

1

3.   It is entirely unclear why this case has escalated and is before this Court except due to the egregiously unlawful and inscrutable conduct of Defendants and their unwillingness reasonably to mediate and resolve the claims of Mr. McMahon by a simple, and frequently issued, accommodation within the county: return of Mr. McMahon to his originally contracted title and duties of Firefighter/EMT.

4.   Instead, Mr. McMahon has been subjected to forced labor under threat of financial and psychological harm, reputational damage through official disciplinary record including "insubordination" and other character-defaming charges, a year of lost wages and benefits, out-of-pocket costs for therapies and pursuit of diagnosis for PTSD, and cost of time and resources to fight Defendants' lawlessness.

5.   As a final resort to seek lawful redress of his claims, protection of his rights, and the ability to return to the profession he loves in service of his community, Mr. McMahon brings these claims before this Court.

## PARTIES

6.   Plaintiff is a resident of Orange County in Florida and a firefighter/EMT formerly employed by Defendant Orange County in the Fire Rescue Department since 2006.  Plaintiff reported to the Orange County Fire Chief.

7.   Defendant Orange County is a public employer in Florida with over 8000 employees county-wide.  Its legislative branch is comprised of the County Board of County Commissioners (BCC); and county Mayor Jerry L. Demings is both chair of the BCC and the head of the executive branch of the Orange County government. Pursuant to Fla. Stat. § 48.111, Mayor Demings is the agent for service of process against Defendant.

2

8.   Defendant Fire Chief James M Fitzgerald ("Chief Fitzgerald") is the politically appointed head of the Orange County Fire Rescue department within Defendant Orange County.  Deputy Fire Chiefs all report directly to Chief Fitzgerald.

9.   Defendant Deputy Fire Chief, Operations Mike Wajda ("Chief Wajda") was appointed by the Fire Chief to his position, which is the second level in the management hierarchy of OCFR and reports directly to the Fire Chief.  Division Chiefs report to Deputy Fire Chiefs within OCFR.

10. Defendants Assistant Chief Michael A. Howe ("AC Howe") and Defendant Assistant Chief Kimberly Buffkin ("AC Buffkin") were appointed internally to the Assistant Chief position, which is the first line officer in the chain of command who issues discipline, up to and including termination within OCFR.  The Assistant Chief position is the first level in the management hierarchy of OCFR and reports to the Division Chief.

11. Defendant County is the employer of Plaintiff Mr. McMahon, and individual Defendants make policy for Defendant County in the OCFR department, carry out the policies, and make and enforce disciplinary decisions in their official capacities.

## JURISDICTION AND VENUE

12. Jurisdiction is proper in the Circuit Court for Mr. McMahon's state and federal claims under Fl. Stat. § 26.012 and pursuant to Fl. Stat. § 112.3187(8)(c) of the "Whistle-blower's Act", Fl. Stat. §112.042 and Fl. Stat. § 760.11(4), under which Mr. McMahon brings his claims.

13. As this matter involves the Orange County government, its officials in their official capacity, and a former public employee of Orange County, this matter is properly brought before the Circuit Court in and for Orange County.

3

14. All conditions precedent to this action have occurred, have been performed, or have been waived.

**BACKGROUND FACTS**

15. After completing enlisted military service with the United States Marine Corps, Mr. McMahon sought further to serve his community, and applied for employment with Defendant Orange County in its Fire Rescue Department ("OCFR").  He was hired in 2006, signing a Pre-Employment Agreement to work in a 40-hour position with Defendant County as "Firefighter/EMT".  **Exhibit 1: Pre-Employment Agreement.**

16. Pursuant to the Pre-Employment Agreement, Mr. McMahon completed his required OCFR training, including Florida State Minimum Standards Course and Emergency Medical Technician Course.

17. Under the Pre-Employment Agreement, Mr. McMahon was also obligated to obtain and maintain his state firefighter and EMT licenses, pass the "Physical Agility Test" for OCFR, and remain with OCFR as an employee for a minimum initial period of three years.  By its express terms, the "Agreement will remain in effect for the entire duration of [Mr. McMahon's] employment with Orange County Fire Rescue Department."

18. About six and a half years after beginning his employment with OCFR, Mr. McMahon sought the job duties of a Paramedic, a very stressful, high-stakes job daily saving lives and giving individuals in the Orange County community a chance in dire, life-and-death situations.

19. After completing Paramedic School, Mr. McMahon received his certification and began Paramedic duties in addition to firefighter duties in May of 2013.

20. The decision to serve as a Paramedic was entirely voluntary.  Mr. McMahon is under no obligation by contract or law to engage in paramedic duties, and Defendant County did not pay for his Paramedic School or certification costs.

21. The requirements for an EMT-B with OCFR include 12 week "school" or training; and the employment duties include basic life support and CPR, bandaging, splinting, and minor bleeding control, basic airway management, spinal immobilization to a backboard, and assisting patients in taking their medications.

22. In contrast, paramedic training requires an additional Paramedic School of 52 weeks and more than 100 clinical hours before being approved for duty.  Job duties of the paramedic under OCFR include all of the EMT duties plus advanced cardiac life support (ACLS), establishing intravenous and intraosseous delivery of fluids/medicine, administration of advanced medications, complex ECG rhythm identification for acute and emergent treatment, transcutaneous pacing, synchronized cardioversion of various cardiac rhythms, endotracheal intubation, performing percutaneous cricothyrotomy, performing gastric decompression, and performing manual defibrillation, among other duties.

23. An EMT on the scene is not required to make the life-and-death medical decisions and diagnoses.  However, a Paramedic is scrutinized by medical control, EMS Quality Assurance, and, of course, the family of the patient, for decisions on the treatment course decided for patients within seconds, as a patient is in critical danger.

24. Five years into his position as Firefighter/Paramedic, Mr. McMahon was summoned to a call involving a youth in an active suicide by hanging.  It was a horrific scene, and the child died. The situation left an indelible image in Mr. McMahon's mind, and was particularly haunting to him as a father himself.

25. Things changed emotionally for Mr. McMahon after that call.  For the next couple years, he was on duty as a Paramedic on several more calls involving tragic deaths of children, one infant as young as three months old.  The strain of the position as Paramedic was no longer bearable for Mr. McMahon.

26. It is fairly common for Paramedics to "burn out" on the job from the immense emotional and psychological stress of the types of tragic and violent incidents to which the Paramedic is called to save lives.  Because of the nature of the calls, many patients for a Paramedic ultimately do not survive their wounds.

27. In a situation in which a Paramedic employed by OCFR finds the duties of the job too emotionally difficult, OCFR has routinely approved requests - including as medical accommodations for psychological trauma and PTSD - to drop paramedic duties and continue to employ the employee as a Firefighter/EMT.  **Exhibit 2: Employee Change Notices and supporting documentation.**

28. Noting his need for medical accommodation for his emotional distress, on February 22, 2021, Mr. McMahon requested up his chain of command to Defendant AC Buffkin an accommodation in the form of dropping his Paramedic title and resuming his original employment title and duties as Firefighter/EMT.  Eventually, he was diagnosed with PTSD stemming from the emergency call he was sent to involving the 2018 traumatic death of a minor.  Despite his years of service in active duty as a marine, he never suffered previously from PTSD.

29. Initially, Defendant approved Mr. McMahon's accommodation by signature of Assistant Chief James Bates on April 18, 2021.

30. However, for undisclosed reasons, Defendants abruptly changed course and essentially rescinded the accommodations previously approved.  Instead of proceeding with interactive

process and discussing other options or accommodations, Defendant AC Buffkin charged Mr. McMahon with violations of county policy, operational regulations, OCFR rules, and standard operating procedures.

31. On July 4, 2021, Defendants through written notice signed by Defendant AC Buffkin terminated Mr. McMahon's employment.

32. Mr. McMahon challenged the termination decision by grievance process and reached a Settlement Agreement with Defendant Orange County on March 10, 2022.

33. The terms of the Settlement Agreement expressly declared that Mr. McMahon's prior July 2021 termination was rescinded and he would be reinstated to his "former, station, and shift as soon as practical."  He was also to be paid back pay and receive a credit for all paid time off to which he was entitled under the governing collective bargaining agreement for the period of time from July 2021 to March 2022.  **Exhibit 3: Settlement Agreement.**

34. The Settlement expressly reinstated all terms and conditions of Mr. McMahon's Pre-Employment Agreement: "any pre-employment agreements signed by the parties are not altered by this agreement."  The Settlement Agreement further required OCFR to mark all of Mr. McMahon's disciplinary records and termination decision stemming from its refusal to honor his medical accommodation as "Rescinded, Not for Future Use." **Exhibit 3.**

35. Importantly, the Settlement Agreement did not create any obligation on Mr. McMahon to continue in employment as a Paramedic.  Instead, the Agreement only obligated him to have his Paramedic License reinstated with the State of Florida prior to returning to work, and he could then request through an administrative hearing the dropping of his state license.

36. State certification for paramedic services requires completion of the state-approved paramedic program and test for a state license.  In contrast, a "stand-alone paramedic" status with

Defendant Orange County requires both the state certification and an additional ten shifts with a county Paramedic Preceptor, completion of testing in training, and final testing with the medical director of the department.

37. Mr. McMahon promptly completed all compliance training and testing required to return to duty, and the checklist was signed by Assistant Chief of Training Michael Howe and Capt. Darion Butler on April 7, 2022. **Exhibit 4: Return to Duty Checklist.**

38. Other than *Training* regarding Paramedic services, there is no requirement in the Checklist at all to engage in paramedic calls, nor to take "reacclimation shifts" as a paramedic. **Exhibit 4.**

39. However, on April 11, Mr. McMahon, pursuant to the Settlement Agreement, sought yet again to obtain medical accommodation through an administrative hearing provided for in the terms of settlement agreement. Defendants, through Asst. Chief Scott Egan, denied his request, violating his settlement agreement and instead demanded that he instead complete five "re-acclimation shifts" as a paramedic. **Exhibit 5: Accommodation Request.**

40. From April until August, Mr. McMahon then sought treatment at UCF RESTORES which is a program specializing in treatment for first responders. During that time, he also continued to demand Defendants' processing of his medical accommodation request, notifying his chain of command immediately upon receiving the diagnosis of PTSD from the program.

41. On May 16, and again with clarification on June 3, 2022, UCF RESTORES provided letters detailing Plaintiff's treatment for PTSD that started on May 3, 2022, stemming from the emergency call he was sent to involving the 2018 traumatic death of a minor.

42. Defendants continued with their campaign of retaliation and harassment against Mr. McMahon. Instead of discussing appropriate accommodations for PTSD, accommodations that are indeed fairly common in the OCFR, Defendant AC Buffkin scheduled Mr. McMahon for a

fitness for duty medical review, which only reviews physical fitness – not emotional or psychological fitness – for continued duty.

43. In fact, Acting Division Chief Martis Mack cleared Mr. McMahon for full duty after his physical fitness exam, and twice Mr. McMahon's union representative requested Defendant's response to the medical accommodation in writing, which was refused.  Instead, Chief Mack demanded additional documentation of Mr. McMahon's PTSD diagnosis.

44. Not only is UCF RESTORES the OCFR's approved facility for recommended therapy for firefighters and first responders, being uniquely designed to treat such individuals and for specific concerns like PTSD, but the facility is run by Dr. Deborah Beidel, a Ph.D. in Clinical Psychology, who holds Diplomas in Clinical Psychology and Behavioral Psychology from the American Board of Professional Psychology.[1]  Dr. Beidel is also a Professor of Psychology and Medical Education at the University of Central Florida.  The Mental Health Clinician who signed Mr. McMahon's diagnosis and treatment letters from UCF RESTORES, Robin Cooper, is a Licensed Clinical Social Worker.[2]

45. Having used all of his recently re-credited paid time off to get treatment with UCF RESTORES, Mr. McMahon issued Defendants a cease and desist letter on August 6, 2022, demanding that his employment be restored to his Pre-Employment Agreement terms and approving his reasonable accommodation thereby.

46. Defendants utterly ignored Mr. McMahon's plea.

47. Mr. McMahon reported to his shift on August 10, 2022, prepared to serve as EMT/firefighter, and Defendants continued their coercive, retaliatory demand that Mr. McMahon

---

[1] See https://sciences.ucf.edu/psychology/person/deborah-c-beidel/, last accessed November 13, 2022.
[2] An LCSW is recognized by the federal government under the Family and Medical Leave Act as a "health care provider" 29 CFR § 825.125(b)(2).

go on calls as a Paramedic. In honor of his oath as a firefighter, and to protect the community of Orange County, Mr. McMahon refused the unlawful order to go on the call as a Paramedic. He considered it an unacceptable risk and reckless of Defendants to send a compromised Paramedic into the field to perform the very kinds of duties that created the PTSD vulnerability in the first place. Mr. McMahon did not refuse *to go out on his shift* as a firefighter and EMT; but he refused to engage in Paramedic duties involuntarily.

48. Acting Asst. Chief (BC) Shannon Teamer relieved him of duty without pay for the shift, rather than sending him out as an EMT/firefighter.

49. On August 17, 2022, Mr. McMahon informed Mayor Demings in writing of Defendants' unlawful behavior constituting violations of both state and federal law, a "substantial and specific danger to the public's health, safety, or welfare," and acts of "gross mismanagement…or gross neglect of duty" on the part of the OCFR Department.

50. OCFR held a predetermination hearing ("PDH") on August 22, 2022 regarding Defendants' false allegations against Mr. McMahon for failing to comply with an unlawful order. In attendance were Defendant AC Howe, Acting Asst. Chief Teamer, County attorney Scott Shevenell, Human Resources Representative Charles Welsh, and Paul Riccardi as union representative with Mr. McMahon. **Exhibit 6: Termination letter 9/17/22.**

51. While Mr. McMahon had filed the instant action on August 18, 2022 with an emergency temporary injunctive relief motion to stay his termination, the hearing was held nearly a month later on September 14, 2022.

52. At that hearing, Defendant raised the defense that the facility to which Defendant referred its first responder employees for therapy – UCF RESTORES – could not provide what Defendant would consider an official diagnosis from a licensed medical practitioner for consideration of

disability accommodation, despite UCF RESTORES' management under Executive Director Dr. Beidel and licensed social workers and clinicians on staff.

53. The next day, September 15, 2022, an official medical diagnosis of PTSD was provided to Mr. McMahon via letter from Valencia Psychiatric LLC signed by Psychiatrist Dr. Earl Taitt, M.D. This letter was indeed sent to Defendant AC Howe prior to his decision to terminate Mr. McMahon.  **Exhibit 7: Diagnosis Letter.**

54. Mr. McMahon paid for the sessions with Dr. Taitt out of his own pocket and obtained the diagnosis letter in order to seek reasonable accommodations from Defendant, already previously approved in 2021, because in July, Defendants had demanded Mr. McMahon present an official diagnosis of his PTSD disability, rejecting UCF RESTORES' medical diagnosis letters.

55. The official diagnosis from Dr. Taitt was sent on September 15, 2022 to Defendant AC Howe by Mr. McMahon through his union rep Captain Riccardi and HR Advisor Charles Welch. Defendant AC Howe utterly ignored the email sent by Mr. McMahon's union representative with the attached approved request by the psychiatrist.  **Exhibit 8: Email chain of 9/15/22.**

56. After receiving the official PTSD diagnosis, on September 17, 2022, Defendant AC Howe nevertheless unlawfully terminated Mr. McMahon for a second time.  **Exhibit 6: Termination letter 9/17/22.**

57. Defendants made the decision to terminate Mr. McMahon 26 days after the PDH, which is contrary to general department policy of a ten-day period in which to issue a written decision after a PDH.  Moreover, in all of that delay, Defendants *did receive* the official medical disability diagnosis from Dr. Taitt as requested in July 2022, *before* Defendants terminated Mr. McMahon.

58. Mr. McMahon filed a complaint with the U. S. Equal Employment Opportunity Commission ("EEOC") on September 21, 2022, alleging retaliation and discrimination by Defendant employer Orange County that occurred between May 2021 and September 17, 2022.

59. Plaintiff received a "right-to-sue" letter from the EEOC dated September 22, 2022.

60. Mr. McMahon pursued a grievance to challenge his unlawful termination, discrimination and retaliation by Defendants against him for his PTSD disability and refusal by OCFR to provide reasonable and, indeed, frequently department-granted accommodation to drop voluntary Paramedic duties.  A "Step II" grievance hearing was held on October 27, 2022.  Notably, Defendant AC Howe stated on the record in the hearing addressing Mr. McMahon's grievance claim that Defendants violated SOP 6 and Rules 5, 8: "Firefighter McMahon was previously terminated for failure to follow a direct order and returned to work on an agreement. Firefighter McMahon was given a lawful, direct order and failed to again comply with a direct order…." However, pursuant to the terms of the Settlement Agreement, Mr. McMahon's prior discipline, including termination, from 2021 pursuit of medical accommodation should be construed as rescinded and cannot be used in progressive discipline.

61. As a result of this finding and others within the Step II hearing, Defendant Chief Wajda confirmed the discipline of termination against Mr. McMahon on September 17, 2022.  Defendant Chief Wajda denied Mr. McMahon's grievance by written decision issued November 11, 2022.

## COUNT I

### Violation of Florida Whistle-blower's Act Fl. Stat. § 112.3187

62. Paragraphs 1 – 61 are incorporated by reference as if fully set forth herein.

63. The Florida Whistle-blower's Act prohibits an agency "from taking retaliatory action against an employee who reports to an appropriate agency violations of law." Fl. Stat. § 112.3187(2). An agency "shall not dismiss, discipline, or take any other adverse personnel action…[nor] take any adverse action that affects the rights or interest of a person in retaliation for the person's disclosure of information" identified in the Act. *Id.* at (4)(a)-(b).

64. The Act covers disclosure of information that includes:

    a.    Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee of an agency which creates and presents a substantial and specific danger to the public's health, safety, or welfare.

    b.    Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds…or gross neglect of duty committed by an employee or agent of an agency.

Fl. Stat. § 112.3187(5).

65. The employee's disclosure of protected information concerning a local governmental entity, including a county entity, such as Orange County government, must be to the mayor, as a chief executive officer (Fl. Stat. § 447.203(9)) or other appropriate local officials. Fl. Stat. § 112.3187(6). The "other appropriate local officials," for OCFR include supervisors and upper management in Mr. McMahon's line of command.

66. The Act protects employees like Mr. McMahon who "disclose information on their own initiative in a written and signed complaint;"…who initiate a whistleblower complaint; as well as employees "who file any written complaint to their supervisory officials…." Fl. Stat. § 112.3187(7). Mr. McMahon had repeatedly, in writing, protested Defendant's unlawful actions toward him, and made a fully detailed complaint in writing through his cease and desist letter. Mr.

McMahon also initiated a separate professionalism investigation regarding the conduct of Defendant in his case.

67. Mr. McMahon is a public employee protected under the Whistleblower statute. In honor of his oath as a firefighter and public servant, he has refused to put the public at risk with him in the field as a Paramedic with his PTSD compromised condition.

68. The order by Defendants to force Mr. McMahon into the field contrary to his requested medical accommodations needs - which has previously been approved for him - is a violation of federal and state equal employment opportunity law, violating his civil rights. Moreover, Defendants continue to discriminate against him and retaliate against him for requesting accommodation. Defendants refuse to accommodate him, have harmed his professional reputation by claiming he is insubordinate, and have terminated Mr. McMahon because of his disability and assertion of his rights and the law, while granting identical accommodations to many other firefighters within OCFR. **Exhibit 2.**

69. Defendants' violations are abusive and a gross neglect of duty by Defendants toward OCFR employee, Mr. McMahon, and also "creates and presents a substantial and specific danger to the public's health, safety, or welfare" to put a Paramedic in the field with PTSD, stemming specifically from his prior calls as a Paramedic.

70. As a result of Mr. McMahon's challenge of Defendants' unlawful orders, Defendants sent him home from his shift without pay, pursued disciplinary charges against him, violated his settlement agreement and used prior discipline in assessment of his second termination, and terminated Mr. McMahon on September 17, 2022.

71. Mr. McMahon has suffered damages through lost wages and loss of paid time off, denigration of his character, emotional distress, and loss of dignity from the continued harassment from Defendant and unlawful termination of his employment.

WHEREFORE, Plaintiff Matthew McMahon respectfully requests that this Court enter judgment for Plaintiff and against Defendants; and order Defendants to reinstate Plaintiff to his Firefighter/EMT position and to reinstate and credit all of Plaintiff's accrued paid time off he has used to challenge Defendants' actions and seek treatment (734 hours); enjoin Defendants from requiring Plaintiff to report for further Paramedic shifts; and enter an award for reasonable attorney's fees and costs to Plaintiff together with any other relief the court deems just and proper.

## COUNT II

### Breach of Contract – Pre-Employment Agreement

72. Paragraphs 1 – 61 are incorporated by reference as if fully set forth herein.

73. Defendants had a duty under the Pre-Employment Agreement to sponsor Mr. McMahon through his EMT training and thereafter employ Mr. McMahon as a Firefighter/EMT. The Agreement's terms expressly continued for the duration of Mr. McMahon's employment with OCFR.

74. Defendants breached their duty to Plaintiff under the Contract by coercing Mr. McMahon to engage in duties beyond the terms of his employment, and refusing to allow him to continue his shifts as Firefighter/EMT from April 2021 to September 2022, terminating him for refusing to comply with Defendants' unlawful coercion.

75. Defendants' breach is the proximate cause of Plaintiff's injury, including but not limited to, loss in wages and loss of employment benefits.

WHEREFORE, Plaintiff requests that this Court enter an order in favor of Plaintiff Matthew McMahon and against Defendants for breach of contract; award Plaintiff compensatory damages, attorney's fees and costs; and order all such further relief as the Court deems necessary and just.

## COUNT III

### Breach of Contract – Settlement Agreement

76. Paragraphs 1 – 61 are incorporated by reference as if fully set forth herein.

77. Defendants had a duty under the Settlement Agreement to reinstate Mr. McMahon to his "former, station, and shift as soon as practical;" "rescind its July 3, 2021, letter discharging the Employee;" allow Mr. McMahon the right to seek "dropping of his state qualification/certification as a paramedic;" mark prior discipline documents and give them treatment "Rescinded, Not for Future Use;" and pay partial backpay and credit back to Mr. McMahon paid time off from the period of termination.

78. Defendants breached their duty to Plaintiff under the Contract by coercing Mr. McMahon to engage in duties beyond the terms of his employment, refusing to allow him to continue his shifts as Firefighter/EMT, denying his right to seek grievance process to drop paramedic duties and attendant certifications, and terminating his employment using his prior discipline as basis for additional discipline.

79. Defendants' breach is the proximate cause of Plaintiff's injury, including but not limited to, loss in wages and loss of employment benefits.

WHEREFORE, Plaintiff requests that this Court enter an order in favor of Plaintiff Matthew McMahon and against Defendants for breach of contract; award Plaintiff compensatory damages including but not limited to all backpay owed from July 4, 2021 to present, attorney's fees and costs; and order all such further relief as the Court deems necessary and just.

## COUNT IV

**Discrimination and Retaliation in Violation of
Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12112, 12203**

80. Paragraphs 1 – 61 are incorporated by reference as if fully set forth herein.

81. The Americans with Disabilities Act ("ADA") prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 USC § 12112(a).  Such discrimination includes:

    a.    "(b)(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee."

    c.    "(b)(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter."

    d.    "(b)(3) utilizing standards, criteria, or methods of administration – (A) that have the effect of discrimination on the basis of disability; or (B) that perpetuate the discrimination of others who are subject to common administrative control."

    e.    "(b)(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity;" and

    f.    "(d)(1) The prohibition against discrimination…shall include medical examinations and inquiries."

17

42 USC § 12112.

82. Disability is defined by the ADA as including "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment…." 42 USC § 12102(1).  Major life activities include, but are not limited to, engaging in one's employment.

83. The ADA prohibits an employer "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. §12203(a).

84. Defendant County, under which individual Defendants carry out their official duties as officers, is subject to ADA, as an employer "employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year…."  42 USC 12111(5)(A).

85. Defendants engaged in prohibited employment practices under the ADA by, *inter alia*, coercing Mr. McMahon into engaging involuntarily in Paramedic duties for which he was under no contractual or other legal obligation to Defendants, and when he refused on the basis of requested reasonable medical accommodations, Defendants refused to provide such accommodations.  Defendants first approved accommodations, then for no stated or substantiated reason, denied the approval, subjecting him to psychological stress, a program of harassment, two unlawful terminations, detriment to Mr. McMahon's professional reputation by virtue of unlawful and unreasonable charges of insubordination, breach of his pre-employment contract terms, and thereafter, breach of his settlement terms because Defendants refused to accommodate his PTSD disability.  Defendants never engaged in any interactive process regarding Mr. McMahon's

18

reasonable accommodations request and has never indicated any undue hardship to providing Mr. McMahon's requested accommodation to drop paramedic duties.

86. At all times that Mr. McMahon has protested Defendants' unlawful actions toward him and failure to provide accommodations, including his cease and desist letter sent to Defendants, initiation of a departmental investigation into Defendants' behavior, as well as submitting his whistle-blower letter to Mayor Demings.  Defendants have not ceased their discrimination but have proceeded with discipline and terminated Mr. McMahon in retaliation for his protected acts, as prohibited by the ADA.

87. As a direct consequence of Defendants' unlawful suspension and subsequent termination, Mr. McMahon has suffered damages through lost wages, loss of his accrued benefits and time off pay, other employment benefits, denigration of his character and loss of dignity, and costs in seeking future employment.

WHEREFORE, Plaintiff Matthew McMahon respectfully requests that this Court enter judgment for Plaintiff and against Defendants; and order Defendants to reinstate Plaintiff to the position of EMT/Firefighter under his Pre-employment Agreement at the pay level held before his termination(s), or to an equivalent position and remove the unlawful termination(s) from his employee file; to reinstate full fringe benefits and seniority rights; to compensate Plaintiff for lost wages (from July 4, 2021 to the present), benefits, and other remuneration as proper; and enter an award for reasonable attorney's fees and costs to Plaintiff together with any other relief the court deems just and proper.

## COUNT V

### Discrimination and Retaliation in Violation of
### Florida's Civil Rights Act Fl. Stat. § 760.01, *et seq.*

88. Paragraphs 1 – 61 are incorporated by reference as if fully set forth herein.

89. The Florida Civil Rights Act ("FL CRA") prohibits an employer from "discriminat[ing] against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.."  Fl. Stat. § 760.10(7).

90. Other prohibited employment practices include:

a.   "(1)(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

b.   "(1)(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

c.   "(2) to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status or to classify or refer for employment any individual on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

Fl. Stat. § 760.10.

91. Defendant County is subject to FL CRA, as an employer "employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year…."  Fl. Stat. § 760.02(7).

92. Defendants engaged in prohibited employment practices under FL CRA by, *inter alia,* coercing Mr. McMahon into engaging involuntarily in Paramedic duties for which he was under no contractual or other legal obligation to Defendants, and when he refused on the basis of requested reasonable medical accommodations, refusing to provide such accommodations. Defendants first approved accommodations, then for no stated or substantiated reason, denied the approval, subjecting him to psychological stress, a program of harassment, two unlawful terminations, detriment to Mr. McMahon's professional reputation by virtue of unlawful and unreasonable charges of insubordination, breach of his pre-employment contract terms, and thereafter, breach of his settlement terms because Defendants refused to accommodate his PTSD disability.  Defendants never engaged in any interactive process regarding Mr. McMahon's reasonable accommodations request and have never indicated any undue hardship to providing Mr. McMahon's requested accommodation to drop paramedic duties.

93. At all times that Mr. McMahon has protested Defendants' unlawful actions toward him and failure to provide accommodations, including his cease and desist letter sent to Defendants, initiation of a departmental investigation into Defendants' behavior, as well as submitting his whistle-blower letter to Mayor Demings, Defendants have not ceased their discrimination, but have proceeded with discipline and terminated Mr. McMahon in retaliation for his protected acts, as prohibited by the FL CRA.

94. As a direct consequence of Defendants' unlawful suspension and subsequent termination, Mr. McMahon has suffered damages through lost wages, loss of his accrued benefits and time off

pay, other employment benefits, denigration of his character and loss of dignity, and costs in seeking future employment.

WHEREFORE, Plaintiff Matthew McMahon respectfully requests that this Court enter judgment for Plaintiff and against Defendants; and order Defendants to reinstate Plaintiff to the position of EMT/Firefighter under his Pre-employment Agreement at the pay level held before his termination(s), or to an equivalent position and remove the unlawful termination(s) from his employee file; to reinstate full fringe benefits and seniority rights; to compensate Plaintiff for lost wages (from July 4, 2021 to the present), benefits, and other remuneration as proper; and enter an award for reasonable attorney's fees and costs to Plaintiff together with any other relief the court deems just and proper.

### COUNT VI

**Civil Action under 18 U.S.C. § 1595 for Violation of Forced Labor Prohibition**

95. Paragraphs 1 – 61 are incorporated by reference as if fully set forth herein.

96. The U.S. Constitution states, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII.[3]

97. Under Federal law, it is a criminal offense knowingly to provide, obtain, profit or benefit financially from, or receive anything of value from participation in a venture which has provided or obtained the labor or services of a person "by means of … *serious harm or threats of serious harm* to that person or another person;… the *abuse or threatened abuse of law or legal process*;

---

[3] "Although the immediate aim of the thirteenth amendment was the abolition of slavery, it has been construed to encompass or maintain a system of free and voluntary labor throughout the United States." *Weidenfeller v. Kidulis*, 380 F.Supp. 445 (1974) (citing *Pollock v. Williams*, 322 U.S. 4, 17 (1944)).

or … any scheme, plan, or pattern intended to cause the person to believe that, *if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint*….” 18 U.S.C. § 1589 (emphasis added).

98. 18 U.S.C. § 1589 further provides: “(c)(1) The term ‘abuse or threatened abuse of law or legal process’ means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.  (c)(2) The term ‘serious harm’ means any harm, whether physical or *nonphysical*, including *psychological, financial, or reputational* harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm. *Id*. (emphasis added).[4]

99.  An individual who is a victim of a violation of the statute against forced labor may bring a civil action against the perpetrator and may recover damages and reasonable attorney’s fees. 18 U.S.C. § 1595.

100.     Individual Defendants violated the constitutional and statutory prohibition against forced labor by using coercive tactics, including suspension and two unlawful terminations from employment to force Mr. McMahon to perform voluntary paramedic duties in an involuntary manner.

101.     Mr. McMahon was ready, willing and able to perform the contractual duties of his job as an EMT/firefighter upon return to work and had completed all return-to-the-field tasks promptly to the satisfaction of the department.  However, Defendant Chief Fitzgerald through

---

[4] The criminal conduct prohibited by the statute is punishable by up to 20 years in prison and/or fine.

employees under his command, including Defendants Chief Wajda, AC Howe, and AC Buffkin, refused to accept Mr. McMahon's lawful employment and insisted under threat of suspension and discipline, that he perform duties as a paramedic involuntarily.   Indeed, when Mr. McMahon refused to engage in paramedic duties on shift in honor of his oath to the people of Orange County, based on his compromised position due to the disability of PTSD, Mr. McMahon was suspended immediately, rather than being sent out on shift as EMT/firefighter.

102.     Defendant Chief Fitzgerald through his command of OCFR has sought to coerce Mr. McMahon into engaging in forced labor using a program of harassment under color of law against Mr. McMahon, denying his disability assertion and request for reasonable accommodation, rejecting duly prepared medical diagnosis and recommended accommodation from a licensed, board certified psychiatrist, initiating disciplinary actions over a period of fifteen months from April 2021 to September 2022 against Mr. McMahon, and imposing defamatory and unsubstantiated allegations against him for insubordination.

103.     Contrary to Defendants' treatment of Mr. McMahon, it is common OCFR practice to provide the accommodation of removal of paramedic duties from employees to return to EMT/firefighter duties where requested, including where the employee has sought the accommodation for the disability of PTSD, similar to Mr. McMahon's request.

104.     Defendants' unlawful actions against Mr. McMahon have proximately caused Mr. McMahon financial and reputational harm, including loss of wages, and an employment history disciplinary record including two unlawful terminations.

WHEREFORE, Plaintiff requests that this Court enter an order in favor of Plaintiff Matthew McMahon and against Individual Defendants under 18 U.S.C. §1595; award Plaintiff compensatory damages including but not limited to all backpay owed from July 4, 2021 to present,

attorney's fees and costs; order investigation against Individual Defendants by an independent oversight body with enforcement power up to and including removal from office; and order all such further relief as the Court deems necessary and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 15th day of November, 2022.

Respectfully Submitted,
___/s/ Rachel Rodriguez___
VIRES LAW GROUP, PLLC
Rachel Rodriguez, FL Bar # 110425
515 N. Flagler Dr., Suite P300
West Palm Beach, Florida 33401
561-370-7383 (phone/fax)
rrodriguez@vireslaw.group (email)

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was filed and served utilizing the Florida Courts E-Filing Portal on November 15, 2022 to Douglas Noah, Esq. at DNoah@drml-law.com, John W. Keller IV, Esq.  at  jkeller@anblaw.com,  Patricia Rego Chapman, Esq. at PChapman@drml-law.com, Wayne Helsby, Esq. at whelsby@anblaw.com, Antoinette@drml-law.com, Jillian@drml-law.com, kmaxson@anblaw.com, marissa@drml-law.com, dianaw@drml-law.com.

/S/ *Rachel L.T. Rodriguez, Esq.*

*Counsel for Plaintiff*

EXHIBIT 1




## ORANGE COUNTY FIRE RESCUE
## RECRUIT FIREFIGHTER
## PRE-EMPLOYMENT AGREEMENT

In consideration of hiring costs, tuition payments, as well as State exam fees, I, MATTHEW MCMAHON_____, agree to attend and complete all required Orange County Fire Rescue Department training to include the Florida State Minimum Standards Course and the Emergency Medical Technician Course through the sponsorship of Orange County Fire Rescue Department and under the following conditions:

1.   I will be assigned to the position of Fire Rescue Recruit and receive recruit pay.

2.   I will attend and participate in the Florida Minimum Standards class and the Emergency Medical Technician class while on duty.

3.   I will participate in certification assessments to achieve Florida Minimum Standards and Emergency Medical Certification within the required time frame.

4.   Reassignments to Firefighter/EMT will be obtained upon completion of State Certifications in Firefighting and EMT within the required time frame.

5.   I will be assigned to a 40-hour position while attending Orange County Fire Rescue Department orientation.

6.   I will remain employed as a Fire Rescue Recruit, Firefighter/EMT or Firefighter/PM with Orange County Fire Rescue for a period of at least three (3) years from my hire date. If I depart employment with Orange County Fire Rescue Department prior to the three (3) year period, I agree to reimburse Orange County Fire Rescue Department for my hiring and training costs in the amount of $3,400.00. This will be billed to me directly and will be due in full upon receipt of the invoice.

7.   If hired as a Firefighter/Paramedic, I understand that I am required to maintain my Paramedic Certification including those requirements needed to practice in Orange County as set forth by the Orange County Medical Director's office.

8.  As a condition of my continued employment with Orange County Fire Rescue Department, I understand that I will be required to participate in and pass, the Physical Agility Test administered by Orange County Fire Rescue Department on an annual basis.

9.  I understand that by execution of this document I hereby affirm that I have not been a user of tobacco or tobacco products for at least one year prior to employment by Orange County and that I will refrain from any future use of tobacco or tobacco products whether on or off duty while employed by Orange County Fire Rescue Department. Failure to comply may result in actions up to and including termination.

10. I agree that as a condition of my employment with Orange County I will not use any drugs, except over the counter medications, or those prescribed by a licensed physician.   I understand that I will be required to submit to drug tests under the provisions set forth in the Collective Bargaining Agreement, that these tests are mandatory, and that failure to do so may result in actions up to and including termination.

11. I acknowledge that this agreement does not preclude management's rights to take appropriate action for policy violations and/or inappropriate behavior on my part.

I, ___MATTHEW MCMAHON___, have received a copy of this Agreement and understand that this Agreement will remain in effect for the entire duration of my employment with Orange County Fire Rescue Department.

I further understand that any violation of this Agreement will result in disciplinary action, up to and including termination.

_____
                     **Signature**

**STATE OF FLORIDA**
**COUNTY OF** _Orange_

Sworn to and subscribed before me this _30th_ day of _Nov._, 20_06_

_Rita R. Brothers_
**Notary Public**

RITA R. BROTHERS
MY COMMISSION # DD413005
EXPIRES: April 14, 2009
FL Notary Discount Assoc. Co.
1-800-3NOTARY

My Commission Expires:

Personally known ☐ or Produced Identification ☑ - Type of I.D.: _DL - FL_

Revised: 4/20/06

# EXHIBIT 2



## Employee Change Notice
## Short Form

| Company | ☒ BCC ☐ CMP | T&L |
|---|---|---|
| Division | **Fire** | ☐ |

### Name and ID

| Employee ID | First Name: | Middle Name | Last Name  (Ex: Ramirez-Montez Jr) |
|---|---|---|---|
| **123885** | **Daniel** | | **Duxbury** |

### Job Information

*Retro 4/7/19*

| Effective Date  (MM/DD/YY) | Effective Sequence: | Action **Position Change** | Reason for Action **Title Job Code Change** |
|---|---|---|---|
| **3/24/2019** | Effective Sequence: | Action: | Reason for Action: |
| | Effective Sequence | Action | Reason for Action: |

| Position Number. **00000573** | Department ID: **0340621** | Job Code. *4572* | Job Title **FIREFIGHTER** *5u TQ* | | | |
|---|---|---|---|---|---|---|
| Employee Status ☐ Regular ☐ Temporary | Time Status: ☐ Full Time ☐ Part Time | Std Hours *54* | Pay Group ID **BFF** | Salary Admin Plan. **BFF** | Grade **394** | Step **4** |
| Comp/Hourly Rate **15.86** | Next Review Date: (MM/DD/YY) | Service Date: (MM/DD/YY) | FRS Code. | Check Sort | | |

### Reports To

| Position #. | EEID # | Name: |
|---|---|---|
| | | |

### Orange County Dates  (MM/DD/YY)

| Union Code | Certification Date | Class Seniority Date | Longevity Date | Selection Date: |
|---|---|---|---|---|
| | | | | |

### Licenses and Certifications

| License/Certification Type: (Attach Copy) | ☐ CDL-A  ☐ CDL-B  ☐ CDL-C  ☐ EMT  ☐ Firefighter  ☐ Paramedic | ☐ Driver's License-D  ☐ Driver's License-E  ☐ State ID Card  ☐ Correctional Officer  ☐ Other – (Use Comments below) | | |
|---|---|---|---|---|
| Issue Date: (MM/DD/YY) | License Number: | State Issued: | Expiration Date (MM/DD/YY) | |

**General Comments**   *Base  15.86 +* **TQ** 50 + Longevity .15 = Total $ *16.51*



| ECN form Completed by  Human Resources (or designee) | Processed by  Human Resources |
|---|---|
| Date                    **3/22/2019** | Date       *4/15/19* |
| Approved by  Division Manager (or designee) | Approved by  County Administrator (or designee) |
| Date        *4-15-19* | Date. |

Form 51-21S – Revised 04/2015

*4/15/19*
*JBS*



**ORANGE COUNTY GOVERNMENT FLORIDA**

**Employee Change Notice Short Form**

| Company: ■ BCC □ CMP | T&L |
|---|---|
| Division: **FIRE** | □ |

## Name and ID

| Employee ID: | First Name: | Middle Name: | Last Name: (Ex. Ramirez-Montez, Jr) |
|---|---|---|---|
| **121755** | **Stephen** | | **Picard** |

## Job Information

| Effective Date: (MM/DD/YY) | Effective Sequence: | Action: | Reason for Action: |
|---|---|---|---|
| **8/30/2015** | | **post change** | **title job code change** |
| | Effective Sequence: | Action: | Reason for Action: |

| Position Number: | Department ID: | Job Code: | Job Title: |
|---|---|---|---|
| **846** | **0340621** | **4585** | **Mod Temp Duty** |

| Employee Status: □ Regular □ Temporary | Time Status: □ Full Time □ Part Time | Std Hours: **40** | Pay Group ID: **BIT** | Salary Admin Plan: **BF8** | Grade: **397** | Step: |
|---|---|---|---|---|---|---|
| Comp/Hourly Rate: | Review Date: (MM/DD/YY) | Service Date: (MM/DD/YY) | FRS Code: | Check Sort: | | |

## Orange County Dates (MM/DD/YY)

| Union Code: | Certification Date: | Class Seniority Date: | Longevity Date: | Selection Date: |
|---|---|---|---|---|
| | | | | |

## Licenses and Certifications

License/Certification Type: (Attach Copy)
□ CDL-A   □ CDL-B   □ CDL-C   □ Driver's License-D   □ Driver's License-E   □ State ID Card
□ EMT   □ Firefighter   □ Paramedic   □ Correctional Officer   □ Other – (Use Comments below)

| Issue Date: (MM/DD/YY) | License Number: | State Issued: | Expiration Date: |
|---|---|---|---|
| | | | |

**General Comments:** remove PM incentive Base $20.54



ECN form Completed by: Human Resources (or designee)
Date: _9/10/15_

Processed by: Human Resources
Date: _9/10/15_

Approved by: Division Manager (or designee)
Date: _9/10/15_

Approved by: County Administrator (or designee)
Date: _____

R008

Form 51-21S – Revised 10/2014



**ORANGE COUNTY FIRE RESCUE DEPARTMENT**
**OPERATIONS – EMS SECTION**
**Kimberly Buffkin, Battalion Chief**
P.O. Box 5879
Winter Park, Florida 32793-5879

DATE:         September 1, 2015

TO:           Kathy Mora, HR Analyst

FROM:         Kimberly Buffkin, Battalion Chief, Operations – EMS Section

SUBJECT:      Payroll Change Request Drop Paramedic Incentive – FF Stephen Picard

FF Stephen Picard, Badge 1757, is no longer participating in the Provisional Paramedic process with Orange County Fire Rescue. His State EMT license is still active and effective until December 1, 2016.

Please accept this memo as authorization to drop the Paramedic incentive for FF Picard effective pay period 8/30/15.

If you have any questions, please contact me at 407-836-9038.

KB/lc

Attachment

C:    Jeffrey Holton, Assistant Chief, C Shift
      Brett Wasmund, Battalion Chief, Battalion 4, C Shift
      Employee Services
      Operations – Telestaff
      Training – LMS/Target Solutions
      Intermedix

20.54

Healthcare Practitioner License Display

Page 1 of 1





## Medical Quality Assurance (MQA) Services

### License Verification
Data As Of 9/1/2015

**STEPHEN N PICARD**
LICENSE NUMBER: EMT524884

Printer Friendly Version

General Information | Secondary Locations

**Profession**
EMERGENCY MEDICAL TECHNICIAN

**License/Activity Status**
CURRENT/ACTIVE

**License Expiration Date**
12/1/2016

**License Original Issue Date**
12/31/2008

**Discipline on File**
NO

**Address of Record**
PO BOX 5879
WINTER PARK, FL   32793-5879
UNITED STATES
ATTN: OCFRD/EMS BUREAU

The information on this page is a secure, primary source for license verification
provided by The Florida Department of Health, Division of Medical Quality
Assurance. This website is maintained by Division staff and is updated immediately
upon a change to our licensing and enforcement database.

Privacy Statement * Disclaimer
Accessibility Information * Email Advisory
Download Data

**ORANGE COUNTY GOVERNMENT**
**F L O R I D A**

**Employee Change Notice**

| Company: | BCC |
|---|---|
| Division: | Fire Rescue |

## Name and ID

| Employee ID : | Name : |
|---|---|
| 111730 | Thomas Vann IV |

## Personal Information

| Street Address: | City: | State: | Zip: | County: |
|---|---|---|---|---|
| Mailing Address:   ☐ Same as Street Address | City: | State: | Zip: | County: |

| Main Phone:<br>( ) | Other Phone:<br>( ) | ☐ Bus<br>☐ Cell<br>☐ Other | Email Address (Optional) | ☐ Home<br>☐ Bus<br>☐ Other |
|---|---|---|---|---|

**Sex:**
☐ Female
☐ Male

**Highest Education Level:**
☐ Less than HS ☐ High School Graduate or Equivalent ☐ Some College ☐ Technical School ☐ 2 yr College Degree ☐ Bachelor's
☐ Some Grad School ☐ Master's ☐ Doctorate (Academic) ☐ Doctorate (Professional-MD, DDS, JD) ☒ Post Doctorate

**Marital Status:** ☐ Single ☐ Married
Date of Marriage:

**Military Status:**
☐ Active Reserve ☐ Inactive Reserve ☐ No Military Service
☐ Other Protected Veteran ☐ Retired Military ☐ Veteran of Vietnam Era

**Birth Date:** (MM/DD/YY)

**Referral Source:**
☐ Ad ☐ Agency ☐ College Recruiting ☐ CountyEmployee ☐ Former Employee
☐ Internet ☐ Job Fair ☐ Job Posting ☐ Orange TV ☐ Walk-In ☐ Other

**Social Security Number:**

**Ethnic Group:**
☐ American Indian/Alaskan Native ☐ Asian/Pacific Islander ☐ Black
☒ Hispanic ☐ White ☐ Other

**Citizenship Status:** (Supporting documentation required)
☐ Alien Permanent ☐ Alien Temporary ☐ Native
☐ Naturalized ☐ Permanent Resident ☐ Other

## Job Information

| Effective Date: (MM/DD/YY)<br>10/10/10 | Effective Sequence:<br>0 | Action:<br>Position Change | Reason for Action:<br>Title/Job Code Change |
|---|---|---|---|

| Position Number:<br>8846 | Department ID:<br>0340671 | Location Code:<br>FR02 | Job Code:<br>4661 |
|---|---|---|---|

| Job Title:<br>Firefighter 56 | Employee Status:<br>☐ Regular<br>☐ Temporary | Time Status:<br>☐ Full Time<br>☐ Part Time | Employee Class:<br>☐ Trainee ☐ Intern<br>☐ Not Applicable | Std Hours:<br>54 |
|---|---|---|---|---|

| Pay Group ID:<br>BFF | Salary Admin Plan:<br>BFF | Grade:<br>394 | Step:<br>5 | Comp/Hourly Rate:<br>$15.67 | Review Date: (MM/DD/YY) |
|---|---|---|---|---|---|

| Service Date: (MM/DD/YY) | FS 119:<br>☐ Classified<br>☐ N/A | FRS Code: | Check Sort:<br>FFGS 400 |
|---|---|---|---|

## Emergency Contact Information

| Last Name: | First Name: | MI: | Relationship to Employee:<br>☐ Daughter ☐ Father ☐ Friend ☐ Mother<br>☐ Son ☐ Spouse ☐ Other: |
|---|---|---|---|

| Street Address:   ☐ Same Address as Employee | City: | State: | Zip: | County: |
|---|---|---|---|---|

| Main Phone:   ☐ Same Phone as Employee<br>( ) | Other Phone:<br>( ) | ☐ Bus<br>☐ Cell<br>☐ Other |
|---|---|---|

## Licenses and Certifications

**License/Certification Type:** (Attach Copy)
☐ CDL-A ☐ CDL-B ☐ CDL-C ☐ Driver's License-D ☐ Driver's License-E ☐ State ID Card
☐ EMT ☐ Firefighter ☐ Paramedic ☐ Correctional Officer ☐ Professional Engineer ☐ Other – (Use Comments below)

| Issue Date: (MM/DD/YY) | License Number: | State Issued: | Expiration Date: |
|---|---|---|---|

**General Comments:**   Removing PM Incentive  (see attached)

---

Recommended by:
**Division Manager (or designee)**

Date:   10/20/2010  (MS)

Approved by:
**Human Resources**

Date:   10/25/10

Approved by:
**County Administrator (or designee)**

Date:

Form 51-21 – Revised 08/01/07

**Sam, Marie**

| | |
|---|---|
| **From:** | Riestra, Gina |
| **Sent:** | Wednesday, October 20, 2010 9:39 AM |
| **To:** | Brothers, Rita R |
| **Cc:** | Mora, Katherine; Sam, Marie; Peters, Karen S; Moise, Medgina |
| **Subject:** | Needed ECNs - 10/10/10 |
| **Attachments:** | DOC102010.pdf |

Fire Rescue,

We received the attached memos in our office.  Please create the following ECNs:

10/10/10 - Position Change/Title Job Code Change (from Job Code 4597 to Job Code 4661)
#111730      Thomas Van IV
#111098      Phillip Suarez

10/10/10 - Position Change/Title Job Code Change (from Job Code 4603 to Job Code 4580)
#111107.     Michael Joyce

I have the original supporting documents; all I need is the ECNs.

Thanks,

**Gina Riestra**
**Human Resources Specialist**
Orange County Human Resources Division
(407) 836-5836

10/20/2010

*11730*



**ORANGE COUNTY FIRE RESCUE DEPARTMENT**
**David Rathbun, Division Chief, Operations**
P.O. Box 5879
Winter Park, Florida  32793-5879

OCT – 8 2010
*Orange Fire Rescue*
*Employee Services*

'2010 OCT –5 AM 9: 16
ORANGE COUNTY
HUMAN RESOURCES DIVISION

Date:       September 30, 2010

TO:         Thomas Vann IV, Firefighter Paramedic

FROM:       David A. Rathbun, Division Chief, Operations

SUBJECT:    Dropping Paramedic Status

The Operations Division has received your request to voluntarily drop your Paramedic status with the Orange County Fire Rescue Department. The effective date is October 11, 2010.

Should you desire to function again as a Paramedic in the Orange County Fire Rescue Department, you may petition the EMS Bureau in writing and through the chain of command requesting reinstatement. Management will have sole discretion to accept or deny any reinstatement. If approved by Management and the Medical Director, you may be reassigned to the status of Paramedic.

C:    Mike Wajda, Assistant Chief, A-Shift
      Lee Reed, Battalion Chief, Battalion-4/A-Shift
      Wendy Gross, Lieutenant, Station-50/A-Shift
      Mike Howe, Battalion Chief, EMS Bureau
      Personnel File

Sept 10, 2010

111730

To;
Lt. Gross
Capt Hall
Chief Price
Chief Reynolds
Chief Wajda
Chief Rathburn


First I want to thank you for the opportunity to become and be a paramedic for Orange County Fire Rescue, it has been extremely rewarding, challenging as well as heart breaking over the last 4 years. I have had the opportunity and the privilege of caring for the members of our community in the best and most compassionate way that I knew how. I wish that this letter was not what it is and that I could be as physically, mentally and emotionally as strong as other paramedics in this department. Over the last 2 years it has been brought to my attention by family members, friends, and my brothers and sisters of Orange County  that I am not the same person I once was, and after some reflection and some guidance, both spiritual and professional this is what I have found out and these are in no specific order. First, I love being a paramedic. The opportunity to care for those individuals at the highest level that I can is both rewarding and fulfilling. There is no other sense of joy and accomplishment that I have found that is this rewarding. Second, the citizens or Orange County deserve the best and most compassionate treatment and care that we can give them. Third, Orange County deserves paramedics who reflect the most positive image, because the members of this fire department have worked so hard to develop that image and they deserve no less. Fourth, it is one of the most stressful and exhausting careers someone could have. It takes as much as it gives if not more sometimes, depending on where you work. Fifth, it takes a toll on all of your relationships, personal and professional. Sixth, it changes you as a person whether you want to admit or not, unfortunately it makes you  wonder what people aren't  saying  instead of being trusting and seeing the good in people, that is not to say that you don't see the good, but the dishonesty is sometimes overwhelming. Seventh, the opportunity to take infections home to your family is greater because you work with the sickest of the sick. Eighth, it helps you face your own mortality, good or bad I don't know.

This morning I called the state of Florida to get the information to reissue my EMT certification; it will be done in the next 30 days. I have put in several transfers to slower stations, but I do not think that is the right course of action as a paramedic at this point. I am requesting that you allow me to step down as a paramedic and return to being an EMT. With that being said I would like to reevaluate myself in the future. I am going to keep my certifications up on my own, but have no plans to work as a PM elsewhere or attempting to go to school to become a nurse. This is just me becoming the person I once was, the man my family needs, the firefighter that Orange County Fire Rescue hired 9 years ago and the help that the citizens of Orange County deserve.

Sincerely,
Thomas Vann
FFPM/Sat 50/A

# CERTIFIED FIREFIGHTER
# EMPLOYMENT AGREEMENT

In consideration of the pre-employment screening, and hiring costs, I **Thomas E. Vann IV**, agree to the following:

1.  I will be assigned to a 40 hour position while attending Orange County Fire Rescue Department orientation.

2.  I will remain employed as a Firefighter/EMT or Firefighter/Paramedic with Orange County Fire Rescue Department for a period of at least two (2) years.  If I depart my employment or position prior to the two year period, I agree to reimburse Orange County Fire Rescue Department for the incidental costs of $300.00 upon my departure.

3.  I will remain physically fit consistent with the assignment of Firefighter.

4.  I acknowledge that this agreement does not preclude management's rights to take appropriate action for policy violations and/or inappropriate behavior on my part.

I have carefully read and understand all the provisions of this agreement, which sets forth the entire agreement between me and the Orange County Fire Rescue Department and I acknowledge that I have not relied upon any representation or statement, written or oral not set forth in this document.

_____                    __3/15/2002__
**Signature**                                   **Date**

**STATE OF FLORIDA**
**COUNTY OF ORANGE**

The foregoing was acknowledged before me this __15th__ day of __March__, 2002, who is personally known to me or who has produced the following identification __FL D/L__.

_Rita R. Broth___

**NOTARY PUBLIC**
My Commission Expires:

RITA R. BROTHERS
MY COMMISSION # DD 008932
EXPIRES: April 14, 2005
Bonded Thru Notary Public Underwriters

# ORANGE COUNTY GOVERNMENT FLORIDA

## Employee Change Notice

| Company | 30 |
|---------|-----|
| Division | Fire Rescue |

## Name and ID

| Employee ID: | Name |
|---|---|
| 116667 | Alexander Vazquez |

## Personal Information

| Street Address: | | City: | State: | Zip: | County: |
|---|---|---|---|---|---|
| Mailing Address. ☐ Same as Street Address | | City | State. | Zip. | County |

| Main Phone: ( ) | Other Phone: ( ) | ☐ Bus ☐ Cell ☐ Other | Email Address (Optional) | ☐ Home ☐ Bus ☐ Other |
|---|---|---|---|---|

**Sex** ☐ Female ☐ Male

**Highest Education Level:**
☐ Less than HS ☐ High School Graduate or Equivalent ☐ Some College ☐ Technical School ☐ 2 yr College Degree ☐ Bachelor's ☐ Some Grad School ☐ Master's ☐ Doctorate (Academic) ☐ Doctorate (Professional-MD, DDS, JD) ☐ Post Doctorate

**Marital Status** ☐ Single ☐ Married
Date of Marriage

**Military Status:**
☐ Active Reserve ☐ Inactive Reserve ☐ No Military Service
☐ Other Protected Veteran ☐ Retired Military ☐ Veteran of Vietnam Era

**Birth Date: (MM/DD/YY)**

**Referral Source.**
☐ Ad ☐ Agency ☐ College Recruiting ☐ CountyEmployee ☐ Former Employee
☐ Internet ☐ Job Fair ☐ Job Posting ☐ Orange TV ☐ Walk-In ☐ Other

**Social Security Number:**

**Ethnic Group:**
☐ American Indian/Alaskan Native ☐ Asian/Pacific Islander ☐ Black
☐ Hispanic ☐ White ☐ Other

**Citizenship Status: (Supporting documentation required)**
☐ Alien Permanent ☐ Alien Temporary ☐ Native
☐ Naturalized ☐ Permanent Resident ☐ Other

## Job Information  PS4171/11

| Effective Date: (MM/DD/YY) | Effective Sequence. | Action | Reason for Action |
|---|---|---|---|
| 03/6/11 | 0 | **Position Change** | **Title Job Code Change** |

| Position Number. | Department ID | Location Code: | Job Code |
|---|---|---|---|
| 8251 | 0340621 | FR05 | 4661 |

| Job Title: | Employee Status. ☐ Regular ☐ Temporary | Time Status. ☐ Full Time ☐ Part Time | Employee Class: ☐ Trainee ☐ Intern ☐ Not Applicable | Std Hours |
|---|---|---|---|---|
| Firefighter 56 | | | | 54 |

| Pay Group ID: | Salary Admin Plan | Grade: | Step | Comp/Hourly Rate: | Review Date: (MM/DD/YY) |
|---|---|---|---|---|---|
| BFF | BFF | 394 | 3 | 14.49 | |

| Service Date: (MM/DD/YY) | FS 119: ☐ Classified ☐ N/A | FRS Code | Check Sort. FFGS 500 |
|---|---|---|---|

## Emergency Contact Information

| Last Name: | First Name | MI: | Relationship to Employee. ☐ Daughter ☐ Father ☐ Friend ☐ Mother ☐ Son ☐ Spouse ☐ Other |
|---|---|---|---|
| Street Address ☐ Same Address as Employee | | City: | State | Zip. | County |
| Main Phone: ☐ Same Phone as Employee ( ) | | Other Phone: ( ) | ☐ Bus ☐ Cell ☐ Other |

## Licenses and Certifications

**License/Certification Type (Attach Copy)**
☐ CDL-A ☐ CDL-B ☐ CDL-C ☐ Driver's License-D ☐ Driver's License-E ☐ State ID Card
☐ EMT ☐ Firefighter ☐ Paramedic ☐ Correctional Officer ☐ Professional Engineer ☐ Other – (Use Comments below)

| Issue Date: (MM/DD/YY) | License Number | State Issued | Expiration Date |
|---|---|---|---|

**General Comments:** Dropping PM incentive

| Recommended by. Division Manager (or designee) | Approved by: Human Resources | Approved by: County Administrator (or designee) |
|---|---|---|
| Date: 04/20/2011 (MS) | Date 4/25/11 | Date. |

Form 51-21 - Revised 08/01/07



**ORANGE COUNTY FIRE RESCUE DEPARTMENT**
**David Rathbun, Division Chief, Operations**
P.O. Box 5879
Winter Park. Florida  32793-5879

Date:        February 21, 2011

TO.          Alexander Vazquez, Firefighter Paramedic

FROM.        David A. Rathbun, Division Chief, Operations

SUBJECT:     Dropping Paramedic Status

The Operations Division has received your request to voluntarily drop your
Paramedic status with the Orange County Fire Rescue Department. The
effective date is March 5, 2011.

Should you desire to function again as a Paramedic in the Orange County
Fire Rescue Department, you may petition the EMS Bureau in writing and
through the chain of command requesting reinstatement. Management will
have sole discretion to accept or deny any reinstatement. If approved by
Management and the Medical Director, you may be reassigned to the status
of Paramedic

c:      Mike Wajda, Assistant Chief, A-Shift
        Jose Gainza, Battalion Chief, Battalion-4/A-Shift
        Mike Howe, Battalion Chief, EMS Bureau
        Personnel File

        *has been paid!*

EXHIBIT 3

## SETTLEMENT AGREEMENT

This Agreement ("Agreement") is made and entered into by and among Orange County, Florida and its Orange County Fire Rescue Department (the "Employer") and Matthew McMahon (the "Employee"). The Employer and the Employee may hereinafter be collectively referred to as the "Parties."

In consideration of the mutual covenants and promises set forth below and other good and valuable consideration, the Parties expressly, knowingly, and voluntarily agree as follows:

1. On June 22, 2021, the Employer held a Pre-Determination Hearing (PDH) based on alleged violations of county policy, operational regulations, department rules, and standard operating procedures (SOP's). On July 3, 2021, the Employer issued a letter discharging the Employee from the Department, effective July 4, 2021, at 0730 hours, for various alleged violations. The Employee subsequently submitted grievance #21-12036 challenging his termination as without just cause. The Employee's Step II grievance was heard on November 30, 2021. The Parties, in a compromise and settlement of the grievance and all related issues, are now entering into this Agreement, negating the need for a Step III hearing, or any subsequent steps in the grievance process outlined in the applicable collective bargaining agreement.

2. The Employer agrees to rescind its July 3, 2021, letter discharging the Employee, and reinstate the Employee to his former, station, and shift as soon as practical. The Employer agrees to pay the Employee back pay consistent with the terms of this agreement and Article 17, the Grievance and Arbitration Procedure in the Collective Bargaining Agreement (CBA). The Employee's gross wages for the period between July 4, 2021, and March 11, 2022, as calculated by the Union, are approximately $44,246.00 comprised of 18, 106-hour pay periods, with $2,458.11 total base and incentive pay for each pay period. The Employee agrees to accept one half of the wages, he would have otherwise received, for the period between July 4, 2021, and March 11, 2022, had he remained employed. The sum is believed to approximate just over $22,123.00 but will be officially calculated by the Comptroller's Office. Such wage payment will be made less all-required payroll deductions and withholdings. The Employer also agrees to credit the Employee with the number of vacation, sick and personal hours he would have been entitled to under the terms of the collective bargaining agreement had he not been terminated for the entire period of his absence. By signing this Settlement Agreement, the Employee represents that he has not submitted retirement paperwork or otherwise collected retirement benefits from the Florida Retirement System (FRS) that would prohibit his reinstatement pursuant to this Agreement.

3. The Employee agrees he will have his state qualification/certification as a paramedic reinstated prior to being placed back to work with the County. Employee additionally agrees to maintain his State qualification/certification as a paramedic and agrees any

decision to let it "lapse" or "drop" with the State will require prior approval by the Employer. Employer agrees that this does not preclude the employee from filing a future grievance regarding the dropping of his state qualification/certification as a paramedic. Employee further agrees he will promptly complete all of the training required by OCFRD because of his extended absence, upon being placed back to work with the County.

4. All documents in the Employee's personnel file, directly related to the present discipline, such as the letter discharging the Employee and the PDH notices will be marked, "Rescinded, Not for Future Use." The Employee understands that Orange County must maintain and provide previously created records consistent with Florida records retention and public records, laws, and rules. If the Employee willfully and voluntarily separates from service in the future the Employer agrees it will provide a neutral reference to any inquiring potential employer(s), outside of Orange County Government, who is considering hiring the Employee, and in the event any future employer requests information about the circumstances around this agreement, (s)he will be provided a copy of this Agreement upon request.

5. In exchange for the Employer allowing the Employee to return to work, the Employee hereby releases the Orange County Fire Rescue Department, Orange County and the Orange County Board of County Commissioners, its officers, elected officials, appointees, employees and agents, both in their official and individual capacities, from any and all actions, causes of actions, claims, demands, damages, expenses, or costs of any nature, known or unknown, foreseen or unforeseen, whether in tort or contract, at law or in equity, or arising under or by virtue of any federal, state, or local statute as a result of, or in any way pertaining to, but strictly limited to, the circumstances giving rise to the execution of this Agreement.

6. It is expressly understood and agreed that this Agreement shall not be construed as, or be deemed to be, evidence of an admission or concession of any wrongdoing, fault, liability, or damage whatsoever on the part of any of the Parties. Employee specifically acknowledges that Orange County does not admit any wrongdoing or any liability of any kind to Employee. Employee, for his part, does not admit to any violations of County/Fire Rescue rules, regulations, policies, or procedures. The parties agree that any pre-employment agreements signed by the parties are not altered by this agreement.

7. The Parties enter into this Settlement Agreement freely and voluntarily and intend to be bound by its terms.

This Settlement Agreement between Orange County, Florida and its Orange County Fire Rescue Department and Matthew McMahon shall become effective on the date upon which it is fully executed by the Parties.

FOR ORANGE COUNTY AND ITS ORANGE COUNTY FIRE RESCUE DEPARTMENT

BY: _____          DATE: 3-10-22

Michael J. Wajda, Division Chief
Orange County Fire Rescue Department

I have read and understand the contents of this Settlement Agreement and shall abide by the terms and conditions stated therein. I also acknowledge that I have had the opportunity to consult with an attorney and/or my union representation regarding this agreement.

_____          DATE: 3/10/22

Matthew McMahon

EXHIBIT 4



# Orange County Fire Rescue Department
# Return to Duty Checklist

**Start Date:** 4/4/22                **Date Completed:** 4/7/22

**Last Date Worked:** 7/3/21 **Return Date:** 4/4/2022 **Total Days Absent:** 274

**Employee Name:** MATTHEW McMAHON **Badge Number:** 1497

**Training Captain:** DARION G. Butler

All personnel assigned to Fire Operations who are making lateral transfers from a 40 hour workweek to a 56 hour position, have been on light duty for more than 6 months, or have been on leave from the department for more than 6 months (FMLA, military, etc.), are required to have this form filled out by each department as listed below:

## Training Section:

| | Current | Exp Date | On File | Initials |
|---|---|---|---|---|
| EMT | ☑Yes ☐ No | 12/1/22 | ☐ Yes ☐ No | Al |
| Paramedic | ☑Yes ☐ No | 12/1/22 | ☐ Yes ☐ No | Al |
| CPR | ☑Yes ☐ No | 6/2022 | ☐ Yes ☐ No | Al |
| ACLS | ☑Yes ☐ No | 3/2024 | ☐ Yes ☐ No | Al |
| PALS | ☑Yes ☐ No | 6/2022 | ☐ Yes ☐ No | Al |
| DART | ☑Yes ☐ No | 1/2024 | ☐ Yes ☐ No | Al |
| Fire Shelter | ☐ Yes ☐ No | _____ | ☐ Yes ☐ No | _____ |
| Air Pack | ☐ Yes ☐ No | _____ | ☐ Yes ☐ No | _____ |
| FES | ☑Yes ☐ No | _____ | ☐ Yes ☐ No | _____ |

## Safety & Wellness:

|  | | Current | | Initials |
|---|---|---|---|---|

- **IPAT**  ☑ Yes ☐ No    Date of Last IPAT 4-5-22  _(initials)_

- **Annual Physical**  ☑ Yes ☐ No    Date Completed 4-5-22  _(initials)_

- **Wellness Plan Consultation Offered**  ☐ Yes ☒ No    Date Completed 4-5-22  _(initials)_

- **Fit for Duty***  ☐ Yes ☐ No    Date Completed _____  _____

*Assistant Chief or Above Approval ___Michael A. H_____

Comments:_____

_____

_____

_____

Employee Signature: _____  Date: 4-4-22

Wellness Coordinator: _____ #1356  Date: 4-5-22

Battalion Chief of Safety & Wellness: _____  Date: 4/4/22

# Operations:

- Riding out of Class
    - Engineer                                                                                          Initials
        - Complete Engineer Check-off     Date Completed _____     DGB
    - Lieutenant
        - Complete Lieutenant Check-off   Date Completed _____     DGB
    - Captain
        - Complete Captain Check-off      Date Completed _____     DGB
    - BC
        - Complete BC Check-off           Date Completed _____     DGB

- Truck Re-Cert          ☐ Yes   ☒ No
    - 24 Hours           Date Completed _____     DGB Initials
        - Reference IB 16-61

- Squad Re-Cert          ☐ Yes   ☒ No
    - 84 Hours           Date Completed _____     DGB Initials

# Operations:

- SOP's
    - Review Selected SOP's     Date Completed 4/5/2022 DGB Initials

- IB's
    - Review Selected IB's (1month)  Date Completed 4/5/2022 DGB Initials

- GO's
    - Review GO's for time span absent  Date Completed 4/5/2022 DGB Initials

- EOP's
    - Review Selected EOP's     Date Completed 4/5/2022 DGB Initials

- **Target Solutions:** _ℓℓ_ Initials

  - ○ Total Assigned _30_
  - ○ Total Completed _2_

  _Need_  192 hr

- **ISO Annual:** _0_ Hours Completed _ℓℓ_ Initials

  - ○ Driver Training _N/A 0_ Hours Completed
  - ○ Hazmat _0_ Hours Completed
  - ○ Company Officer _N/A 0_ Hours Completed
  - ○ Facility Hours _0_ Hours Completed
  - ○ Company Training _0_ Hours Completed

- **EMS Recertification:** _0_ Hours Completed _ℓℓ_ Initials

  _Need  30 hrs_ — (2hr Peds)
                      (28hr EMS)

**Remediation**    ☐ Yes    ☑ No

Comments:_____

_____

_____

_____

Comments:_____

_____

_____

_____

As required by SOP: Ops 105, Re-Qualifying for Field Assignment, the Training Section has reviewed the employees training file and brought the employee up to date on any mandatory training that was conducted during the employees absence.

Cleared by the Training Section for field assignment      ☒ Yes   ☐ No

If not, why:  _____

_____

_____

Employee Signature: _____ Date: _____

Battalion Chief of Training _____ Date: _____

Assistant Chief of Training _____ Date: _____

Division Chief (Ops) Signature: _____ Date: _____

# EXHIBIT 5

# Paramedic Status

## Mcmahon, Matthew J

Wed 5/11/2022 12:35 PM

To: Henderson, Christopher J <Christopher.Henderson@ocfl.net>;

Cc: Egan, Scott T <Scott.Egan@ocfl.net>; Leavens, Geoffrey M <Geoffrey.Leavens@ocfl.net>;

LT, Can you please forward to following email up the chain of command as soon as possible, as this is time sensitive... Thanks...

-------

I'm writing this email to inform the parties who need to know, that I'm currently being treated at UCF Restores for PTSD relating to being a paramedic. I have CC'd both Chief Egan and Chief Leavens on this email under the direction of Captain Riccardi...

Over the last month or so I have been taking vacation to better myself and recover from things in the past. As of today, I have gone through the intake, assignment and diagnosis process with the results as being diagnosed with PTSD. I'm currently being seen/treated by Robin Cooper, a clinician with the UCF Restores program. This is a process I started in early 2021, however due to my unexpected termination, and the exhausting process leading up to my termination, I was unable to complete anything other the initial contacting of the program. I have now been evaluated by a clinician who has diagnosed me with PTSD relating to being a paramedic.

I am requesting that the department remove my status as a paramedic as I continue treatment with the program in hopes of finding a solution to my ongoing problem. I am reaching out and asking for the support and understanding from my department as it will go a long way in my hopes to make a recovery.

Thank you,

Matt
407-820-7064

# EXHIBIT 6



**ORANGE COUNTY FIRE RESCUE DEPARTMENT**
**Michael A. Howe, Assistant Chief, Training**

P.O. Box 5879
Winter Park, Florida 32793-5879
(407) 836-9000  Fax (407) 836-9138
e-mail: Michael.Howe@ocfl.net

| | |
|---|---|
| Received: _____ | Date: 9·17·22 |
| Delivered: _____ | Date: 9·17·22 |

September 17, 2022

Matthew McMahon, Firefighter, 87/C
6590 Amory Court
Winter Park, FL 32792

***Predetermination Hearing Decision Letter***

Firefighter McMahon,

A Predetermination Hearing was held on August 22, 2022 pertaining to your failure to follow a direct order. During the PDH, the following personnel were present: Assistant Chief Howe, Acting Assistant Chief Teamer, Scott Shevenell County Attorney, Paul Riccardi Local 2057, Charles Welch Human Resources and you.

I have carefully reviewed all written documentation, audio recordings as well as oral testimonies presented during the hearing and have made the following conclusions and determinations:

- You advised you have worked for Orange County Fire Rescue Department since February of 2007

- You advised you were scheduled to report to station 85 on August 10, 2022

- You advised you were scheduled to be the second paramedic on R85 on August 10, 2022

- You advised you reported to station 87 on August 10, 2022 to retrieve all of your items

- You advised that your Lieutenant and you called your Battalion Chief (Leavens) that morning to advise him that you sought an attorney and notify him you served the County with a cease and desist notice the previous Sunday

- You advised Battalion Chief Leavens directed you to report to station 85

- You advised at some point you spoke with the Acting Assistant Chief (Teamer) pertaining you going to station 85

- You advised that Acting Assistant Chief Teamer directed you to go to station 85

- You advised you again spoke with Battalion Chief Leavens who at that point gave you a direct order to go to station 85

- You were asked if you were familiar with the five components of a non-emergency direct order to which you replied vaguely but yes

- You were then asked about each of the five components of a non-emergency direct order

- You were asked if Chief Leavens told you it was a direct order to which you replied yes

- You were asked if you were directed to go to station 85 for the shift and asked if that was work related to which you replied yes

- You were asked if Chief Leavens has the appropriate authority to give a firefighter a direct order to which you replied yes

- You were asked if Chief Leavens told you refusing the direct order can and likely will lead to discipline to which you replied yes

- You were asked if the direct order by Chief Leavens to go to station 85 was explicit and clearly understood by you to which you replied yes

- You were asked if you refused to follow the direct order to which you replied yes

- You advised you believed the direct order to be unlawful

- You were asked if you were familiar with rule 36 - adhering to and reporting improper orders

- You were advised the rule 36 states that employees who receive orders that they feel are unjust or contrary to Department SOP's, General Orders or Rules and Regulations, are required to obey the order

- You were asked if you felt the order was unjust to which you replied absolutely

- You were asked if you obeyed the order to which you replied no

- I then recapped the events by asking if you were scheduled to report to 85, reported to 87 called Chief Leavens who directed you to report to 85, spoke with Chief Teamer who directed you to report to 85 then spoke with Chief Leavens again who gave you a direct order meeting all five components to go to 85 to which you replied yes

- You were asked if you willingly and knowingly refused to comply with a direct order that was given to you by Chief Leavens to which you replied yes

- You admitted that your Battalion Chief directed you twice, once as a direct order (meeting all five components per SOP 046) and the Assistant Chief directed you once to go to station 85 and you failed to comply

Based on the information listed above, I find that you willfully and knowingly refused to comply with a direct order given to you by Chief Leavens. Upon evaluation of the information presented, I find you have violated the following:

- Orange County Fire Rescue Department Rules, R.5, Performance of Duty

- Orange County Fire Rescue Department Rules, R.19, Reporting to Duty

- Orange County Fire Rescue Department Rules, R.24, Unbecoming Conduct

- Orange County Fire Rescue Department Rules, R.32, Insubordination

- Orange County Fire Rescue Department Rules, R.36, Adhering to and Reporting Improper Orders

- Orange County Fire Rescue Department Standard Operating Procedures, SOP 046, Non-Emergency Incident Directives (Direct Orders)

I have reviewed the violations under the Orange County Fire Rescue Department Standard Operating Procedures SOP 6, Corrective Disciplinary Matrix as well as the Orange County Policy Manual & Operational Regulations 413, Disciplinary Action and I have determined your actions to be:

1- B. Performance Deficiencies

   (1) Failure to follow operational procedure

2- C. Behavioral Issues/Unsatisfactory Personal Habits

   (4) Dereliction of duty – willful refusal to perform assigned duties of follow a direct order

   (7) Conduct in a work or non-work status which discredits the County government, public officials, fellow employee(s), or themselves

3- D. Policy Violations
   (20) Non-Compliance with policies, operational guidelines, procedures, orders, rules or regulations

After consideration of all the information and testimony presented, reviewing violations of polices, Union Contract Article 25, Discipline and Discharge, taking into consideration your employment history, the lapse of time between discipline, the Department's response in similar cases and the seriousness of the offense, it is my decision to impose the following:

- Your employment with Orange County Fire Rescue Department will be terminated upon receipt of this letter

- You are directed to return all County/Department issued items in accordance with SOP 027, Separation Process to the Supply Bureau located at 400 S. Gaston Foster Road by September 23, 2022

Employees are encouraged to contact the County's EAP provider, ComPsych whenever they are experiencing personal and or work related difficulties.

See below for more information on ComPsych®:
**Employee Assistance Program (EAP)**
ComPsych Guidance Resources Program
Company ID: ORANGECOUNTY
Member Services: 1-855-221-8929

guidanceresources.com/groWeb/login/login.xhtml

Should you not agree with this decision, you have the right to appeal in accordance with the agreement between Orange County and the Orange County Professional Firefighters Local 2057, Article 17 Grievance and Arbitration Procedures. For the ability to dispute these findings by way of the grievance procedure, your date of knowledge will begin upon receipt of this letter.

Sincerely,

Michael A. Howe
Assistant Chief, Training

c: James M. Fitzgerald, Fire Chief
Mike Wajda, Deputy Fire Chief, Operations
Martis Mack, Acting Division Chief, Operations
Shannon Teamer, Acting Assistant Chief, C-Shift
Geoffrey Leavens, Battalion Chief, B6/C
Abraham Green, Battalion Chief, Centralized Staffing
David Hepker, Program Administrator
Charles Welch, Senior Human Resource Advisor
Suzette Shields, Compliance and Employee/Labor Relations Administrator
Ricardo Daye, Director, Orange County Human Resources
Andre Perez, President, IAFF Local 2057



# Orange County Fire Rescue Department
## Clearance (Out-Processing) Sheet

All personnel assigned to the Orange County Fire Rescue Department (OCFRD) upon separation of employment for any reason are required to complete this separation (out-processing) sheet in accordance with OCFRD **SOP 027**, Separation Process procedures.

The employee shall complete and present this form to the Fire Human Resources prior to their last date of employment, but no later than three days after the last date of employment. Failure to follow the separation process procedures or submit this completed form in the required time-frame may result in a hold being placed on the employee's final payout.

| Employee Name (Last, First MI): | Position: | Employee ID |
|---|---|---|
| **Department:** Orange County Fire Rescue Department | Division: | Supervisor: |

| Division-Bureau Address | OCFRD Property Returned all items | | Division/Bureau (Representative) | | Date |
|---|---|---|---|---|---|
| | YES | NO | Signature | Empl ID | |
| **Logistics-Supply** 400 S. Gaston Foster Rd Orlando, FL 32807 | | | **First Stop** - Return all items, such as, uniforms, helmets, property, equipment, etc. | | |
| **EMS** Station location as applicable | | | Returned all items - such as drug box keys to supervisor, etc. | | |
| **Communications** 6590 Amory Ct, Winter Park, FL 32792 | | | Return all items such as, cell phones, radios, chargers, etc. (If Applicable) | | |
| **Fire Human Resources** 6590 Amory Ct, Winter Park, FL 32792 | | | **Last Stop** - Return all items, such as, the OC and Fire Rescue identification badges, cards, etc. | | |

Employee is encouraged to provide a mailing address/phone number for future correspondence & final payout advice.

**Mailing Address** 

**Phone #**

Fire Human Resources  (Representative):
Employee has cleared all Divisions/Bureaus.

**Signature**

**Date**

# EXHIBIT 7

# Valencia Psychiatry LLC.

## Earl Taitt M.D.

Email office@taittmd.com
4151 Hunters Park Lane Suite 100 Orlando Florida 32837
Phone 407-856-8830     Fax # 407-856-8802

September 15, 2022

Charles R. Welch
Sr. H.R. Advisor
Human Resources
P.O. Box 1393
Orlando Florida 32802-1393

REF: Request for Reasonable Accommodation
Firefighter: Matthew McMahon

This letter is a response to your letter of July1,2022 to Robin Cooper LCSW. The Firefighter says that Robin Cooper LCSW refused to draft a response and told him to take the request to a psychiatrist which he did.

The Firefighter reports that in 2018 he responded to a call finding a hanging citizen dead by suicide. The firefighter says that he was traumatized by the experience and developed anxiety symptoms. He sought evaluation and treatment with UCF Restores.  A diagnosis of Posttraumatic Stress Disorder  was made and treatment initiated that continues to  this day.

The Firefighter asserts that he is too anxious to work as a Paramedic but not too anxious to work as a Firefighter/ EMT.

The Firefighter requests that the Paramedic Incentive be removed and that he be returned to his original  Terms of  Employment as a Firefighter/EMT. The Firefighter request that the accommodation be permanent.

Please grant this request as a Reasonable Accommodation.

Earl Taitt M.D.
Board Certified Psychiatrist

EXHIBIT 8

 Gmail

Matt McMahon <mmcmahon371@gmail.com>

**Psychiatrist Letter**

**Paul Riccardi (VP2)** <VicePresident2@ocffa.com>
To: Matt <mmcmahon371@gmail.com>

Mon, Sep 19, 2022 at 5:36 PM

---

**From:** Paul Riccardi (VP2) <VicePresident2@ocffa.com>
**Sent:** Thursday, September 15, 2022 5:42 PM
**To:** Michael.Howe@ocfl.net <Michael.Howe@ocfl.net>
**Subject:** Fwd: Psychiatrist Letter

Fyi
Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Matt <mmcmahon371@gmail.com>
**Sent:** Thursday, September 15, 2022 3:06:48 PM
**To:** Paul Riccardi (VP2) <VicePresident2@ocffa.com>
**Subject:** Psychiatrist Letter

Attached…

---

📄 **matthew mcmahon.pdf**
38K